The City of Pittsburgh, a Municipal Corporation v. Board of Property Assessment, Appeals and Review of the County of Allegheny. County of Allegheny, Appellant.

Argued December 4, 1979, before Judges CRUMLISH, JR., MENCER, DiSALLE, CRAIG and MACPHAIL. President Judge BOWMAN and Judges WILKINSON, JR., ROGERS and BLATT did not participate.

*Thomas M. Rutter, Jr.,* First Assistant County Solicitor, with him *Alexander J. Jaffurs,* County Solicitor and *John G. Arch,* Assistant County Solicitor, for appellant.

*D. R. Pellegrini,* Deputy City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for appellee.

*Robert J. Stefanko,* for School District of Pittsburgh.

*William J. Fahey,* for Board of Property Assessment, Appeals & Review.

Opinion by Judge Craig, February 25, 1980:

This appeal comes to us from the Court of Common Pleas of Allegheny County, which determined, on appeal by the City of Pittsburgh from a decision of the Allegheny County Board of Property Assessment, Appeals and Review (board), that certain properties owned by Allegheny County were properly subject to

real estate taxes, and therefore entered summary judgment in favor of the city.

The subject property consists of two square blocks of land in downtown Pittsburgh, which the county purchased from the Public Parking Authority of the City of Pittsburgh in April, 1970. At the time of that purchase, the county's intention was to use the properties as the site for construction of government buildings. For reasons not revealed in the record, that proposal has never been effectuated, and the property continues to be utilized, as it was at the time of the county's acquisition, for surface parking lots open to the public.

In 1971 the property was placed in the taxable category by the board. The county did not challenge that categorization by a request for exemption until the spring of 1975, when the property was faced with a city treasurer's sale for nonpayment of taxes.

The board, after hearing the county's request, granted the exemption and exonerated all taxes previously assessed against the property. On the city's appeal to the court of common pleas, that court reversed the board, found the property properly subject to real estate taxation, and ordered the county to pay all appropriate taxes plus penalties and interest. This appeal followed.

The county contends that the lower court erred in reversing the board because the property is entitled to exemption within the criteria set forth in Article VIII, Section 2 of the Pennsylvania Constitution, and The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-101 *et seq.* We agree.

Article VII, Section 2(a)(iii) of the state constitution provides that the General Assembly may by law exempt from taxation "[t]hat portion of public property which is actually and regularly used for public purposes." Section 204(a)(7) of the General County

Assessment Law, *as amended,* 72 P.S. §5020-204(a)(7) provides that "[a]ll . . . public property used for public purposes," shall be exempt from all county, city, borough, town, township, road, poor and school taxes.

The question is thus whether the county's use of the property as a parking facility, available to the public at large, serves such public purpose as to entitle the property to exemption under those provisions.

That the provision of public parking can be a public purpose has been recognized by the courts of this state since *McSorley v. Fitzgerald,* 359 Pa. 264, 59 A.2d 142 (1948), which held constitutional the Parking Authority Law of June 5, 1947, P.L. 458, in the face of a challenge that the purpose served by that law was not a public use. There the court held that "the State may . . . authorize the municipal acquisition and operation of publicly owned and operated parking facilities." *McSorley, supra,* 359 Pa. at 271, 59 A.2d at 146.

To apply that holding to the county here, we need look no further than subdivision (q) of Article XXI of the Second Class County Code, Act of July 28, 1953, P.L. 723, added by the Act of October 20, 1967, P.L. 472, §4, 16 P.S. §5199.9, which authorizes the county's board of commissioners to "appropriate monies from the county treasury for the purpose of purchasing, constructing, maintaining and operating as a county facility a motor vehicle parking facility," which provision is not challenged here by the city. Although the accompanying legislative declaration that this authority is provided for the benefit, health, safety and general welfare of the citizens of the Commonwealth may not be conclusive as to a public purpose being served thereby, it is entitled to great weight, and we see no reason to depart from established precedent.

The city argues that reliance on that provision of the Second Class County Code is misplaced because

the property was originally acquired by the county, not for public parking purposes, but for the construction of government buildings. The city bases this argument on consideration of subdivision (b) of the Second Class County Code, Act of July 28, 1953, P.L. 723, art. XXV, §2505, 16 P.S. §5505, which authorizes acquisition of real property for the construction, alteration or enlargement of a county building, but provides that "[a]ny purchase herein authorized shall be subject to the approval of the Court of Common Pleas of the county *as to purchase price.*" (Emphasis ours.) The city contends that the county, having sought and received that required approval at the time of acquisition, should not now be heard to claim an exemption on any basis other than the purpose for which the property was purchased.

The concise answer is the statute itself: It requires the court's approval only "as to purchase price"; court approval of the decision to purchase itself is not so required. To hold otherwise would automatically involve the courts in any proposed change in the use of county property, at least any property acquired under the cited statute. We cannot perceive that to be the intent of the legislature.

Moreover, we do not see that the policy declarations attendant upon the acquisition of a property, nor the county's compliance with the law pertaining to its intentions, impose a trust or conditions on the county's title so as to preclude all public uses except that intended at the time of acquisition. To so hold would prove a great impediment to a flexible government, responsive to changing conditions and needs. Current government and governmental officers, both executive and legislative, would be hamstrung by past declarations of policy and intent without regard to the vagaries of economic circumstances and political climates.

Therefore, we will reverse the court below insofar as it determined the subject properties to be properly taxable.

However, we will sustain the decision of the court below insofar as it reversed the exoneration of all taxes due from the time the property was first placed in the taxable category. The law is clear that exempt status must be affirmatively requested by the property owner, and is equally clear that the board is without power to grant exemption from assessments not timely appealed. *Appeal of Grandview Cemetery Assoc.*, 209 Pa. Superior Ct. 109, 224 A.2d 780 (1966).

Because the county requested exemption only in the spring of 1975, no exemption could be granted for the triennial period 1972-1973-1974; likewise, that request was untimely with regard to the triennial period 1975-1976-1977. We reach those conclusions because Section 11 of the Act of June 21, 1939, P.L. 626, *as amended* (Act of 1939), 72 P.S. §5452.11, requires appeals of triennial assessments of properties within cities of the second class to be taken by November 15 of the year before the period for which the assessment would be effective. Thus the deadlines for the above triennial periods passed in November, 1971 and November, 1974 respectively.

The county's request was similarly untimely as an intertriennial application for the year 1975, because Sections 13 and 14 of the Act of 1939, 72 P.S. §§5452.13 and 5452.14, read together, provide that intertriennial requests for revised assessments must be made before the first Monday of September of the year preceding the one to which the request would apply. Thus the deadline for 1975 passed on the first Monday of September, 1974.

Therefore, the county's request for exemption, entered in the spring of 1975, could be timely only as to taxes for 1976 and thereafter. Thus the board erred

both in granting exemption for years before 1976 and in exonerating taxes based on assessments applicable through the year 1975.

Accordingly, we affirm the court below as to taxes for the years 1971 through 1975, and otherwise reverse and remand with the direction that the order of the board be reinstated as to the years 1976 and thereafter.

## ORDER

AND Now, this 25th day of February, 1980, the September 13, 1978 order of the Court of Common Pleas of Allegheny County is affirmed as to taxes for the years 1971 through 1975, and is otherwise reversed and remanded with the direction that the order of the board be reinstated as to the years 1976 and thereafter.

This decision was reached prior to the death of President Judge BOWMAN.

Judge DISALLE did not participate in the decision in this case.

Judge MACPHAIL dissents.