555 A.2d 1357

Western Pennsylvania Water Company *v.* Board of Property Assessment, Appeals and Review, County of Allegheny, Commonwealth of Pennsylvania, City of Pittsburgh, Appellant.

Western Pennsylvania Water Company *v.* Board of Property Assessment, Appeals and Review, County of Allegheny, Commonwealth of Pennsylvania, The Borough of Baldwin, Appellant.

Western Pennsylvania Water Company *v.* Board of Property Assessment, Appeals and Review, County of Allegheny, Commonwealth of Pennsylvania, Baldwin-Whitehall School District, Appellant.

Western Pennsylvania Water Company *v.* Board of Property Assessment, Appeals and Review, County of Allegheny, Commonwealth of Pennsylvania, The Borough of West Mifflin, Appellant.

Western Pennsylvania Water Company *v.* Board of Property Assessment, Appeals and Review, County of Allegheny, Commonwealth of Pennsylvania, Bethel Park School District, Appellant.

Western Pennsylvania Water Company *v.* Board of Property Assessment, Appeals and Review, County of Allegheny, Commonwealth of Pennsylvania, Keystone Oaks School District, Appellant.

Argued February 7, 1989, before President Judge CRUMLISH, JR., Judge COLINS and Senior Judge BARBIERI, sitting as a panel of three.

*D. R. Pellegrini,* City Solicitor, for appellant, City of Pittsburgh.

*Joseph P. Decker,* for appellant, Borough of Baldwin.

*Edward R. Lawrence, Jr., Alter, Wright & Barron,* for appellant, Baldwin-Whitehall School District.

*Donald C. Fetzko,* for appellant, The Borough of West Mifflin.

*Stanley Yorsz,* for appellant, Bethel Park School District.

*Matthew M. Hoffman, Steele & Hoffman,* for appellant, Keystone Oaks School District.

*James H. Webster, Springer, Bush & Perry,* for appellee, Western Pennsylvania Water Company.

OPINION BY SENIOR JUDGE BARBIERI, March 10, 1989:

Before the Court are the consolidated appeals of the City of Pittsburgh, Borough of Baldwin, The Borough of

West Mifflin, Baldwin-Whitehall School District, Bethel Park School District and Keystone Oaks School District (collectively Appellants) from the order of the Court of Common Pleas of Allegheny County which struck Appellants' tax liens on the property of the Western Pennsylvania Water Company (Appellee) for the years 1956 and 1970 through 1976. We affirm.

Appellee is a public utility which owns various parcels of real estate used in utility service situated in each of Appellants' municipalities or school districts in Allegheny County. In order to understand how these municipalities and school districts were able to place tax liens on Appellee's property during the years 1970 through 1976 and why these liens must be stricken, it is necessary to review the background of the litigation that came to this Court fifteen years ago in *Duquesne Light Co. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 10 Pa. Commonwealth Ct. 41, 299 A.2d 660 (1973), which reasoning was subsequently affirmed in *AT&T Co. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 461 Pa. 716, 337 A.2d 844 (1975).

Historically, realty used in utility service is exempt from direct local real estate taxation. *Schuylkill Bridge Co. v. Frailey*, 13 S & R 422 (Pa. 1826). In 1968, Article VIII, Section 4 of the Pennsylvania Constitution was enacted which provided that while real property of public utilities was initially subject to local taxation, payment to the Commonwealth of a gross receipt tax and distribution by the Commonwealth to the local taxing authority of its *pro rata* share shall be in lieu of local taxes imposed upon the utility's real property. Article VIII, Section 4 was then implemented by the Public Utility Realty Tax Act (PURTA), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§8101A-8108A.

Under Section 8105A of the PURTA scheme, the appointed assessor of real property, which in the present case is the Board of Property Assessment, Appeals and Review of Allegheny County (Board), is to assess all utility realty in the same manner as any other real estate and prepare a listing for each local taxing authority. Section 8106A then requires the local taxing authority to submit a yearly report to the Commonwealth containing the name of each public utility owning utility realty within its jurisdiction and the assessed value of such utility realty. The Commonwealth then taxes the public utility directly and distributes to the local taxing authority its share of the receipts. If the local taxing authority fails to submit any reports, it forfeits its share of the tax distribution.

The Board realized that when PURTA came into effect during the fiscal 1970-1971 year it would have to assess all the utility realty in Allegheny County which had up to that point been tax exempt. In order to perform this assessment, in 1970 the Board reclassified every piece of utility realty in Allegheny County from tax exempt to taxable. This presumably administrative decision has led to nearly twenty years of litigation culminating in this case.

Because all utility property, including Appellee's, had now been classified as taxable, the local taxing authorities, including Appellants, sent out tax notices to the owners who promptly ignored them since they were paying PURTA taxes to the Commonwealth. Failure to respond to the notices led to Appellants filing tax liens against Appellee's properties. Since Appellants, with one exception, had at the same time filed PURTA reports with the Commonwealth and received PURTA distributions, they made no move to execute on or enforce these tax liens which have lain dormant since 1970.

In 1971, a number of public utilities including Duquesne Light Company and AT&T decided to challenge the Board's reclassification of their utility property from exempt to taxable. These challenges were consolidated and came before this Court in *Duquesne Light*, wherein we held that the real estate of the utilities involved remained exempt as long as PURTA taxes were paid. We stated that:

> . . . the Board of Property Assessment, Appeals and Review of Allegheny County improperly and illegally reclassified the Utilities' real property used and useful in its public utility service from 'exempt' to 'taxable.' From that result it naturally follows that the tax statements and tax liens issued and filed by the local taxing authorities are null and void. . : .

*Duquesne Light*, 10 Pa. Commonwealth Ct. at 56, 299 A.2d at 667-668.   AT&T prevailed only partially in this case and took a further appeal to the Supreme Court. In *AT&T*, the Court held that the utility realty of AT&T was entirely tax exempt, thus affirming the reasoning of this Court in *Duquesne Light*.

When the *AT&T* case was handed down, the Board beginning in 1976 reclassified all utility realty in Allegheny County from taxable to provisionally exempt. This solved the problem from 1976 to date. What the Board did not do was strike or deal with the tax liens imposed on Appellee's property from 1970 to 1976.[1] These "reminders" of the Board's illegal action in 1970 remain on the books and Appellee's attempt to strike them forms the basis of this appeal.

---

[1] To further complicate the situation, two tax liens imposed in 1956 are also included in this case. Since Appellee's property was utility realty in 1956 as well as in 1970, the trial court also struck these liens as illegally imposed. We join in the reasoning of the trial court.

On April 28, 1983, Appellee instituted this instant case by filing a petition with the Board to exonerate Appellee from the payment of all real estate taxes since 1970 and to strike the tax liens "improperly levied" against its property. On January 24, 1984, the Board denied Appellee's petition without comment and Appellee promptly appealed to the trial court. Appellant City of Pittsburgh then filed a motion to quash the appeal as untimely.

On February 12, 1985, while this case was pending, counsel for the Board wrote Appellee's counsel a letter conceding that all Appellee's property in question had always been utility realty, that Appellee had always paid PURTA taxes on it, and that therefore all of the tax liens filed were null and void under *Duquesne Light* (R. 98-99a). Counsel stated that the Board had no authority to strike these liens and advised Appellee to file a rule to show cause as to why the liens should not be stricken and to attach a copy of the letter to the petition to show that the Board was in agreement with Appellee's position.[2] Appellee did file a rule to show cause but later withdrew it and proceeded on its assessment appeal.

The trial court elected to hear this assessment appeal as a chancellor sitting in equity. The trial court held that the Board did have jurisdiction to strike improperly imposed tax liens, and that Appellee could challenge *nunc pro tunc* the imposition of tax liens filed thirteen years before its appeal. The trial court concluded that the liens represented double taxation since Appellee had paid PURTA taxes from 1970 through 1976 and struck all liens as null and void under *Duquesne Light*. Appellants now present a number of issues on appeal dealing with juris-

---

[2] A copy of this letter was also sent to the President Judge of the Court of Common Pleas of Allegheny County who presided over this case and whose opinion is the subject of this appeal.

diction, untimeliness, collateral attack, laches and estoppel which we will consider *seriatim*.

## I. JURISDICTION OF THE BOARD AND TRIAL COURT

Appellants argue that the Board's powers are limited to increasing or decreasing the assessment of a property and do not extend to striking tax liens. Secondly, Appellants assert that in an assessment appeal to the trial court, the trial court's powers are limited to changing the Board's assessment. There is no authority for the trial court to sit in equity in an assessment appeal where no equity complaint has been filed.

Section 5452.4(c) of the General County Assessment Law (Law), Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §5452.4, gives the Board the power to hear all cases of appeals from assessments, and all complaints as to assessments, errors, exonerations and refunds. Appellee is seeking exoneration from an error made by the Board. Counsel for the Board admits the Board's error and concedes Appellee's position. We must conclude that since the statute gives the Board the power to hear the case, it must also confer on the Board the power to grant the remedy.

Furthermore, it has already been held that the Board has the authority to change property classifications and exonerate property owners from payment of local property taxes in *AT&T* and *Duquesne Light*. Both of these cases started out as petitions to the Board requesting exoneration from payment of local property taxes. As in this case, the petitioners requested the Board to rectify the results of its error in reclassifying utility realty subject to PURTA as taxable. Appellee has quite conscientiously copied the procedure in *AT&T* and *Duquesne Light*.

We adopt this rationale by holding that since the Board has the power to correct its errors by exonerating payment of local property taxes, it has the power to strike

tax liens filed as a direct result of the failure to pay these incorrectly imposed local property taxes. Thus, the trial court had no need to sit in equity and could directly reverse the denial of Appellee's petition before the Board under the reasoning of *Duquesne Light.*

Our Supreme Court has previously held that a trial court may sit in equity in an assessment appeal in *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974) and *Blue Cross Appeal,* 416 Pa. 574, 209 A.2d 799 (1965), where the constitutionality of the imposition of tax is challenged. Appellee pleaded before the Board and the trial court that the tax imposed contravened Article VIII, Section 4 of the Pennsylvania Constitution. Jurisdiction was properly before the Board and the trial court. We next turn to whether jurisdiction was lost due to the untimeliness of Appellee's challenge.

## II. Appeal *Nunc Pro Tunc* and Collateral Attack

Appellants next argue that Appellee is attempting to collaterally attack a tax lien filed thirteen years previously in violation of the statutory appeal process of Section 5452.11 of the Law, 72 P.S. §5452.11. We have repeatedly held that if no appeal is taken within the time allowed by law the assessment of taxes becomes binding and conclusive and the courts have no jurisdiction to reach back over a period of years and resurrect exemptions. *In Re: Petition of Mausoleum Construction Co.,* 55 Pa. Commonwealth Ct. 504, 423 A.2d 809 (1980); *City of Pittsburgh v. Board of Property Assessments, Appeals and Review of Allegheny County,* 49 Pa. Commonwealth Ct. 442, 412 A.2d 655 (1980). However, in the present case the trial court was able to rely on the unique actions of the Board to justify an appeal *nunc pro tunc* through administrative breakdown of the system.

Normally in an assessment case the Board presents its record of assessments in order to establish the *prima facie* validity of the tax imposed. In the present case, the Board entered its appearance but presented no evidence or record. Without the Board's record, Appellants were compelled to prove the amounts assessed and the notice provided to Appellee for every tax bill issued for the years 1956 and 1970 through 1976. Appellants did not have copies of the tax notices or statements sent out to Appellee over a decade ago.[3] The trial court reasoned that Appellee could not appeal taxes assessed which it had no notice of and therefore an appeal *nunc pro tunc* was justified by Appellants' administrative breakdown in the system.

The trial court's reasoning is a convenient rationalization since Appellants' tax statements are memorialized by tax liens duly filed and recorded. Nevertheless, we do find an administrative breakdown in the system which justifies a *nunc pro tunc* appeal. This breakdown came in 1976 when *AT&T* was handed down and the Board changed back the classification of Appellee's property to provisionally tax exempt but failed to completely remedy its prior mischief by striking the tax liens this Court ruled null and void in *Duquesne Light*. The Board changed the tax classifications illegally in 1970, changed back the classifications in 1976, but failed to finish the job.

By 1976, Appellee's property was burdened by illegal tax liens which had been in place for six years. Statutory appeal of these liens was by this time impossible. Appellee was under no obligation to seek a tax exemption, the

---

[3] Not only were Appellants unable to provide any sort of proof that tax statements were in fact mailed out for the years in question, but the Commonwealth also lost its records of the official PURTA filings made by Appellants. The only proper documentation before the trial court was the record of PURTA payments consistently made by Appellee and the tax liens themselves.

appellate courts of this Commonwealth had just finished ruling that Appellee's property was always exempt. Appellee was the victim of the Board's error and we do not believe Appellants have a right to hide behind this error. *Duquesne Light* is directly on point and collaterally estops Appellants from asserting the validity of their liens. Appeal *nunc pro tunc* to strike liens already ruled by this Court as null and void is the only possible solution.

### III. ESTOPPEL, LACHES AND DOUBLE TAXATION

Appellants next argue several variants of their contention that Appellee's appeal was untimely, namely laches and estoppel. Laches is a failure to assert one's rights in a timely manner resulting in prejudice to the opposing party. *Fumo v. Insurance Department,* 58 Pa. Commonwealth Ct. 392, 427 A.2d 1259 (1981). Appellants argue that they based their budgets, millage rates and projected revenue from tax statements sent to Appellee. Since this Court ruled in *Duguesne Light* in 1972 that such a method of taxation was illegal and all liens filed null and void, we find no prejudice. One cannot rely on a nullity.

Appellant Keystone Oaks School District asserts that since it never filed for PURTA payments in 1974, Appellee should be equitably estopped from striking its 1974 tax lien. Under the PURTA scheme, a local taxing authority which fails to file a PURTA report with the Commonwealth forfeits its share of PURTA distributions. Estoppel includes the elements of inducement and reliance. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983). Appellee did not induce Keystone Oaks School District not to file a PURTA report.

Appellant The Borough of West Mifflin asserts that since it was not a party to the original petition and was not joined until 1987, its constitutional right to notice has been violated. The Borough of West Mifflin was granted leave to intervene by the trial court and participated in

the case at the trial court level. The Borough's absence before the Board is of no matter since the Board denied Appellee's petition.

Appellants further argue that Appellee's exemption status was not self-executing and Appellee was under an affirmative duty to seek exemptions before the Board. *Duquesne Light* held otherwise. There is substantial support in the record to find that Appellee was the victim of double taxation based on the record of Appellee's PURTA payments, the tax liens, and the concessions of the Board. There is simply no doubt that Appellee's property has always been exempt from local taxation as utility realty and the liens that have lain dormant and forgotten on the property for nearly twenty years should be stricken as null and void. The order of the trial court is affirmed.

ORDER

NOW, March 10, 1989, the order of the Court of Common Pleas of Allegheny County at No. GD 84-2911, dated March 7, 1988, is hereby affirmed.

Judge BARRY did not participate in the decision in this case.