## In re Purchase of Contiguous Parcels of Real Estate

C.P. of Montgomery County, no. 94-17475.

*Joseph J. Pizonka,* for appellant, Borough of Norristown.

*David N. Bressler,* for appellant, Sacred Heart Hospital.

*Larry J. Folmar,* for Montgomery County.

CARPENTER, *J.,* October 18, 1994—

## FACTS

Appellants Sacred Heart Acquisition Corporation and the Borough of Norristown appeal an order of this court dated September 7, 1994, which approved the purchase price to be paid by Montgomery County for certain real estate totalling 4.916 acres in the Borough of Norristown, the Sacred Heart property. The County of Montgomery was the successful bidder at an auction in bankruptcy conducted by the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. The county sought court approval, from the Court of Common Pleas of Montgomery County, of the purchase price for the property pursuant to 16 Pa.C.S. §5505(a). The county, therefore filed a verified petition with this court.

We granted approval pursuant to the statute after a conference with attorneys representing the county commissioners and S.H.A.C. At the conference, the attorneys for S.H.A.C. conceded that the purchase price the county was going to pay for the Sacred Heart property was of fair market value. The S.H.A.C. attorneys also indicated that their own bid was substantially similar to the county's bid. At the conference the S.H.A.C. attorneys focused their objections on the county's proposed use of the property.

The county had bid, and has agreed to pay $7,050,000 for the Sacred Heart property. Appellant, S.H.A.C. was

the second highest bidder. Their bid was $7,000,000. The property consisted of not only real estate, but also equipment and improvements.

## ISSUES

(1) Whether appellants' contention that a hearing was required for the court to approve the purchase price of the property is supported by statutory authority, case law or public policy?

(2) Whether the court's decision to approve the purchase price of the property was justified where the price was fair and reasonable?

## DISCUSSION

### I. *The Court Properly Determined That a Hearing Was Not Provided For, Pursuant to Section 5505, Prior to Court Approval of the Purchase Price for the Property*

#### A. Appellants' Interpretation of Section 5505 Is Unsupported by the Laws of Statutory Construction

As previously stated, this appeal centers around this court's approval of purchase price for the Sacred Heart property pursuant to section 5505(a) of the County Code. Appellants' assertion that a hearing was required prior to our approval of the purchase price is unsupported by the law regarding statutory construction. Section 5505(a) states as follows:

"The county commissioners may purchase, take by gift, devise or by the power of eminent domain, in accordance with the provisions of this act, such real property at the county seat or in such other places,

as may be authorized by law, as they deem necessary for the purposes of a county courthouse, county jail, prison, workhouse, detention house or other county building, either in acquisition of a building suitable for such purposes or in the construction of a new building, or in the alteration, including enlargement, of an existing county building. Any purchase herein authorized shall be subject to the approval of the court of common pleas of the county as to *purchase price,* and no such contract shall bind the county, nor shall any conveyance be valid until the court has so approved the *purchase price."* 16 Pa.C.S. §5505(a). (emphasis added)

This statutory provision does not provide for a hearing prior to court approval of a county purchase. Section 5506 of the Second Class County Code is entitled "Authority to Sell or Lease Real Property." The section provides as follows:

"The board of commissioners may sell or lease, either as lessors or lessee, any real property belonging to the county or to others where the county is lessee. Any sale herein authorized shall be by petition to the court of common pleas, setting forth a description of the property to be sold and the reason therefor; the court shall thereupon fix a day for hearing and notice of which shall be given in at least two newspapers, in the county, of general circulation, once a week for three consecutive weeks. After hearing, the court shall make such order and decree as shall seem right and proper." 16 Pa.C.S. §5506(a).

This section requires notice and a hearing in order for the County Board of Commissioners to "sell, lease,

either as lessor or lessee, any real property belonging to the county or to others where the county is lessee." *Id.* Both sections 5505 and 5506 were enacted as part of the Second Class County Code.

"When construing a statute, the starting point is the language therein; absent any evidence to the contrary, a statute's plain meaning must prevail. ... Where the legislature includes specific language in one section of a statute and excludes the language from another, the language should not be implied where excluded." *O'Boyles Ice Cream Island Inc. v. Commonwealth,* 146 Pa. Commw. 374, 377, 605 A.2d 1301, 1302 (1992). (citations omitted)

"A fundamental principle of statutory construction is that, where a section of a statute contains a given provision, the omission of that provision from a similar section is significant to show a different intention existed." *Corley v. Pennsylvania Board of Probation and Parole,* 83 Pa. Commw. 529, 534, 478 A.2d 146, 149 (1984). (citations omitted)

Instantly, the intent of the legislature is clear with regard to the alleged hearing requirement. The legislature chose to specifically address the issue regarding the requirement of a hearing in section 5506 of the statute. In section 5505, however, they chose to omit the hearing requirement. This omission is clear evidence of the legislative intention not to require a hearing in section 5505 situations. To construe the statute otherwise would lead to an absurd result, therefore, it is clear that hearings are required to sell but not to purchase real estate.

It is not for this court to add provisions to the statute which simply are nonexistent. If the legislative intent

was for the court to conduct a hearing in section 5505 situations they would have specifically provided for a hearing in that particular section.

### B. Appellants' Interpretation of Section 5505 Is Against Public Policy

Appellants' contention that a hearing was required prior to our approval of the purchase price of the Sacred Heart property is meritless since this interpretation of section 5505 would be against public policy. Title 1 of Pa.C.S. along with applicable case law govern statutory construction. Section 1922(5) of title 1 provides that, "The General Assembly intends to favor the public interest as against any private interest." 1 Pa.C.S. §1922(5).

Appellants' interpretation of section 5505 would promote the goals of special interest groups while severely impairing the purchasing power of the county commissioners to the public detriment. Special interest groups might delay or prolong the hearing and effectively render the county unable to successfully complete the purchasing process. The commissioners might be unable to act expeditiously when required by a given situation. In the instant case, the delay which would have been caused by the proposed hearing might have prevented the commissioners from closing the sale of the property within the deadline imposed on them by the bankruptcy court. The county's bid was conditioned upon their ability to close the sale of the Sacred Heart property within 40 days. The county would then have been forced to forfeit their $205,000 security deposit which would have been paid for by taxpayers.

If the county was unable to purchase property expeditiously, its citizens could suffer harm in situations

where the county could not provide necessary facilities. Instantly, the county sought to provide a geriatric facility and a morgue for its citizenry. It would, therefore, be against public policy to construe section 5505 to require a hearing in order for the court to approve the purchase price of real property by the county.

## II. *The Court Was Justified in Approving the Purchase Price of the Property Where the Price was Fair and Reasonable*

Appellants' contention that this court should not have approved the purchase price of the Sacred Heart property is baseless since the price was fair and reasonable. As previously stated, section 5505 of the Second Class County Code requires court approval of the "purchase price" of any county purchase of real property.

Our decision to approve the purchase price of the Sacred Heart property was not arbitrary and capricious since, in reaching that decision, this court reviewed the county's petition for approval and relied on various other information. The county's petition set forth relevant and verified information relating to the property. The petition referred to an appraisal of the property as follows: "The real estate, with its improvements, has recently been appraised as having a fair market value of $7,000,000 for purposes of sale, and as having a replacement value of $23,000,000." (Petition of the county for approval of purchase price, paragraph 8.)[1] Additionally, the petition also revealed that the U.S. Bankruptcy Court had approved the county's bid.

---

1. Although we were later informed by the county that the numbers were slightly different, the change did not affect the appropriateness of our approval of the purchase price.

After reviewing the petition, this court held a conference whereby more information was supplied. At the conference the attorney for the S.H.A.C. revealed that they were the second highest bidder. Their bid for the property was in the amount of $7,000,000, only $50,000 less than the county's bid.

The attorney for S.H.A.C. represented that they were not disputing that the county's bid was of fair market value. He argued, however, that the purpose for which the county was going to use the property somehow affected court approval pursuant to section 5505. In effect, he argued that the court should review the county's "decision to purchase."

The Commonwealth Court has addressed the scope of court approval required by section 5505(a) in *City of Pittsburgh v. County of Allegheny,* 49 Pa. Commw. 442, 412 A.2d 655 (1980).

The court stated:

"[The statute] requires the court's approval only 'as to purchase price;' court approval of the decision to purchase itself is not so required. To hold otherwise would automatically involve the courts in any proposed change in the use of county property, at least any property acquired under the cited statute. We cannot perceive that to be the intent of the legislature." *Id.* at 446, 412 A.2d at 657.

Instantly this court refused to examine the county's decision to purchase the property. We instead focused on whether the purchase price was fair and reasonable. We determined that the price was fair and reasonable since the county's bid was at an approximate fair market value for the property. The purpose for which the county was going to use the property was irrelevant, according to the statute and case law, to our decision to approve the purchase price. This court's approval of the purchase

price for the Sacred Heart property was well grounded in the more than adequate information presented and supported by the relevant case law.

We were very clearly not confronted with a situation in which the county sought to pay far more for a property than it was actually worth. S.H.A.C.'s true complaint seems to be, not that this court improperly approved the county's purchase, but that the county outbid them. The propriety of the bidding process belongs to the bankruptcy court. To allow S.H.A.C. to frustrate that process by this collateral attack would be improper especially in light of the reasonableness of the county's action. This court's decision of approval should, therefore, be upheld on appeal.

## CONCLUSION

Based on the foregoing analysis, the order of this court should be affirmed.