## George Calantoni & Sons, Inc. *v.* Board of Supervisors.

Argued October 2, 1972, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Stanley E. Stettz*, with him *Fackenthal, Teel & Stettz*, for appellant.

*Carl K. Zucker*, with him *Leonard M. Cohn, Reuben E. Cohen* and *Cohen, Shapiro, Polisher, Shiekman & Cohen*, for appellee.

Opinion by Judge Kramer, November 16, 1972:

This is an appeal from an order, dated December 6, 1971, of the Court of Common Pleas of Northampton County, remanding the appeal of George Calantoni & Sons, Inc. (Calantoni), to the Planning Commission of Forks Township (Township) for the purpose of resolving a dispute between the Township and Calantoni, concerning floor area ratios. The order also stated that, if the resolution of the said dispute was in favor of Calantoni, then the Planning Commission was directed to approve Calantoni's plans for a Planned Unit Development (PUD), which plans are described hereinafter.

Calantoni is the owner of 31.66 acres of land in Forks Township. The land is located in a district zoned "G-B District—General Business" under the Township's Zoning Ordinance. This Ordinance is dated September 18, 1968, and was enacted pursuant to the authority conferred by The Second Class Township Code, Act of May 1, 1933, P. L. 103, art. XX, as amended, 53 P.S. §67001 et seq.

On or before April 13, 1971, Calantoni filed plans, related data, and an application seeking approval of the PUD for the said tract of land with the Township Planning Commission. Section 721 of the Zoning Ordinance contains the regulations applicable to PUD and in Subsection 721.02 it provides: "Location. Planned unit developments are permitted in the RR, R-20, R-12 and R-9 Districts (upon condition)." Section 641 of the Zoning Ordinance contains the permitted uses for a G-B district, and at Subsection 641.16 states: "Any use permitted in R-9 District."

On April 13, 1971, the Planning Commission decided that preliminary approval would be granted for the PUD, provided the Township Supervisors and Township Solicitor ascertained that Calantoni had used the proper method in determining the necessary floor area ratio. In an opinion, dated April 30, 1971, the Township Solicitor found the floor area issue to be moot, because in his opinion, a PUD could not be placed in a G-B district. The Solicitor found as a matter of legislative intent that the Zoning Ordinance was not intended to permit pyramid zoning and that the Township Supervisors had intended that residential uses, such as the PUD, were not to be tolerated in a business or commercial district. Based primarily upon the Solicitor's opinion, both the Planning Commission and the Township Board of Supervisors advised Calantoni that a PUD development would not be permitted on the land

in question, and therefore, approval of its plan was refused. The record is not clear whether a hearing was held before either the Planning Commission or the Township Supervisors; but in any event, Calantoni appealed directly to the Court of Common Pleas of Northampton County. Although the record does not disclose a hearing before the court below, it is assumed that the court accepted the admitted averments of the appeal pleadings, together with what appear to be stipulated documents taken from the records of the Planning Commission and Board of Supervisors of the Township. Based on this record, the court below made findings of fact and conclusions of law from which it issued the remand order. In summary the lower court concluded that the two sections of the Zoning Ordinance at issue, namely Sections 641 and 721, were not in conflict and that by virtue of the wording of Subsection 641.16, Calantoni had a right to approval of his PUD, provided the dispute concerning the floor area ratios was settled or determined by the Township.

In appealing to this Court, the Township has presented one issue. That is, whether the court's interpretation of the two-named sections of the Zoning Ordinance was correct thereby permitting the PUD proposal of Calantoni. We must first start with an understanding that in this Commonwealth a property owner has certain constitutional rights in his property. These include a right to use his own home and property any way he desires, provided that he does not (1) violate any provisions of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any laws or zoning or police regulations which are constitutional. Zoning ordinances are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare and not unjustly discriminatory, or ar-

bitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property. *See Lord Appeal,* 368 Pa. 121, 125, 81 A. 2d 533, 535 (1951). Zoning laws are founded upon the constitutional principles of the police powers of government to promote the public health, morals, safety and general welfare. *See Best v. Zoning Board of Adjustment,* 393 Pa. 106, 141 A. 2d 606 (1958) and *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A. 2d (1958). As has been said so many times in decisions of the appellate courts of this Commonwealth, zoning ordinances[1] are in derogation of the common law and must be strictly construed. *See Peterson v. Zoning Board of Adjustment,* 412 Pa. 582, 195 A. 2d 523 (1963); *Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118 (1954); *Pittsburgh v. Elman Associates, Inc.,* 6 Pa. Commonwealth Ct. 1, 291 A. 2d 813 (1972); *Abington Township v. Dunkin' Donuts Franchising Corp.,* 5 Pa. Commonwealth Ct. 399, 291 A. 2d 322 (1972).

As the quoted subsection of this Ordinance indicates, any permitted use of an R-9 zoning area is a permitted

---

[1] It is of some import to note that we are addressing ourselves to a local zoning ordinance and are not concerned with the enabling legislation which provides the Township's source of authority. As Mr. Justice ROBERTS clearly explains in *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 49, 228 A. 2d 169, 174 (1967), the Statutory Construction Act, Act of May 28, 1937, P.L. 1019, §58, 46 P.S. §558, which provides in pertinent part that "the rule that laws in derogation of the common law are to be strictly construed, shall have no application to the *laws of this Commonwealth* hereafter enacted" defines law as "an act of Assembly of this Commonwealth" and is not controlling with regard to the construction of ordinances. Therefore, there is no conflict between the strict construction of zoning ordinances and the liberal construction of zoning enabling acts. *See also Lower Providence Township v. Ford,* 3 Pa. Commonwealth Ct. 380, 283 A. 2d 731 (1971); *but see* Concurring Opinion of Judge ROGERS contra.

use in a G-B business district. The Township in this case asks us to infer that the Township Supervisors, in passing this Ordinance, intended something other than the clear language of the Ordinance. The Township contends that since the comprehensive plan talks in general terms about encouraging the concentration of commercial establishments in commercial areas and residential developments in residential areas, that this controls the interpretation of the Zoning Ordinance. As we said in *Marino v. Zoning Hearing Board of Harrison Township*, 1 Pa. Commonwealth Ct. 116, 274 A. 2d 221 (1971), a comprehensive plan does not control the ordinance, rather a comprehensive plan should be reflected in the zoning ordinance. The comprehensive plan is a general guideline to the legislative body of the municipality for its consideration of the municipality's program of land utilization and the needs and desires of the community. If there is a conflict between the comprehensive plan and the zoning ordinance, the zoning ordinance must contain the controlling provisions when questions of a citizen's property rights are at issue. As we said in *Morelli v. Borough of St. Marys*, 1 Pa. Commonwealth Ct. 612, 275 A. 2d 889 (1971), the comprehensive plan does not have the legal effect of a zoning ordinance, which actually regulates the land use, as may be recommended by the comprehensive plan. The planning commission may recommend all kinds of desirable approaches to land utilization and development. Not all of these may become eventually legally enforceable in a zoning ordinance. In other words, a comprehensive plan is abstract and recommendatory; whereas the zoning ordinance is specific and regulatory.

If Forks Township does not desire the pyramiding of zoning uses, then it should not have worded its Zoning Ordinance in the manner eventually adopted. There

is nothing in this Ordinance, which we have read in its entirety, which specifically or clearly prohibits residential buildings in a general business or industrial area. Under a strict construction of this Ordinance, the desired PUD development plan of Calantoni is a permitted use on his land in the G-B district. Having concluded that the proposed PUD development is a permitted use, we must affirm the order of the court below. We assume from the wording of the Zoning Ordinance and the lower court's order that after the sole remaining issue concerning the floor area ratios has been determined, Calantoni will be entitled to a building permit, subject to all of the proper provisions of the Zoning Ordinance and the regulations of the Board of Adjustment.

The order of the court below is affirmed.

Judge Rogers concurs in the result only.