Appeal From Ordinance No. 384 of the Borough of Dale, Cambria County, Pa. Kenneth Myers, Jr., Appellant.

Appeal From Ordinance No. 384 of the Borough of Dale, Cambria County, Pa. Paul D. Rogers, Appellant.

Argued November 1, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

432

*Thomas D. Caldwell, Jr.,* with him *Fremont J. McKenrick,* and *Caldwell, Clouser & Kearns,* for appellant, Myers.

*Leo Kostman,* with him *Fremont J. McKenrick,* for appellant, Rogers.

*Randall C. Rodkey,* for appellee.

Opinion by President Judge Bowman, January 31, 1978:

Appellee, Borough of Dale (Borough), employed a police department consisting of two full-time officers. On September 14, 1976, the Borough Council (Council) passed Ordinance No. 384 (Ordinance), Section I of which abolished the police department and Section III of which authorized the Council to contract for police protection with the City of Johnstown pursuant to Section 1202(35) of The Borough Code (Code), Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §46202(35). On October 12, 1976, appellant at No. 397 C.D. 1977, the Mayor of the Borough (Mayor), vetoed said Ordinance. On that same date, the Council voted to override the veto.

The Mayor and appellant at No. 398 C.D. 1977, the Chief of Police (Chief), filed in the Court of Common Pleas of Cambria County petitions pursuant to Section 1010 of the Code, 53 P.S. §46010, seeking to have the Ordinance declared illegal and void.

At argument before the court below, the Mayor argued, *inter alia*, that as there is no specific provision in the Code permitting the abolition of a police department, the Borough lacked the power to do so, could

not now or ever, barring a revision of the Code, abolish said department, and that any action by the Council which would have such an effect would have to comply with the Police Tenure Act, Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §811 et seq.; and, second, that the Ordinance was void for failure to include within its terms the provisions of the contract to be signed with the City of Johnstown, said requirement supposedly being found in Section 1402 of the Code, 53 P.S. §46402. A third point, included in the petition but not specifically argued below, was that the Ordinance deprived the Mayor of the means by which to fulfill his duty under Section 1029 of the Code, 53 P.S. §46029, to preserve order in the Borough and, in conjunction therewith, to direct the manner in which the police department shall perform its duties. Section 1121 of the Code, 53 P.S. §46121.

Appellant Chief of Police joined in the above arguments and argued further that permitting a borough to abolish its police department would vitiate the purpose and intent of the Police Tenure Act by permitting a borough to accomplish indirectly what it cannot do directly.

The Borough argued, first, that as Section 1121 of the Code permits, without compelling, the establishment of a police force, it could not be said that abolishing the department impinged upon the statutory powers or duties of the Mayor; second, that Section 1006 of the Code, 53 P.S. §46006, permits the Borough to undo by ordinance that which was done by ordinance; third, that Section 1005 of the Code, 53 P.S. §46005, permits the cancellation of appropriations previously made to borough offices; fourth, that the Code does not require that the terms of a contract authorized by ordinance be a part of the ordinance; fifth, that while the Code does not expressly authorize the abolition of a police department, it does not prohibit

it; sixth, citing *Toth v. South Huntingdon Township Supervisors,* 48 West. 293, 41 Pa. D. & C. 2d 138 (1966), *appeal quashed,* 425 Pa. 278, 228 A.2d 404 (1967), that the Police Tenure Act does not apply to the abolition of a police department; and, seventh, that Section 1202(74) of the Code, 53 P.S. §46202(74), empowers the Council to do what is necessary for the efficient governing of the Borough and that Council's actions taken pursuant to such power are to be presumed valid.

In an opinion and order dismissing appellants' petitions, the court below found that appellants had failed to overcome the presumption of validity to which legislative acts of a borough council are entitled. The court reasoned that the Police Tenure Act has no application to the abolition of a police department as opposed to a mere reduction in its force and that the Code does not require the inclusion within an ordinance of the terms of a contract authorized thereby.

These appeals, consolidated for argument, and in which substantially the same arguments have been advanced, followed.

Turning first to the Mayor's argument that under Section 1202 of the Code, the terms of a contract must be included within the authorizing ordinance, we fail to find such a requirement in either that or any other section of the Code. *Angelotti v. Rankin Borough,* 341 Pa. 320, 19 A.2d 398 (1941), cited by the Mayor, is distinguishable. Plaintiff therein sought by mandamus proceedings to recover fees for engineering services rendered without the benefit of a written contract. The Court held that the parties had failed to comply with those provisions of the Code requiring such contracts to be in writing and went on to hold that the inclusion in the ordinance of the terms of the unexecuted contract would not support recovery. In the absence of a clear statutory mandate imposing so

onerous a burden upon boroughs, we shall not find one to exist. If such were the case, no borough could enact an ordinance authorizing the execution, negotiation or renegotiation of a contract until said contract had been reduced to final written form. *See* Statutory Construction Act of 1972, 1 Pa. C.S. §1922(1).

We turn next to the applicability of the Police Tenure Act to the abolition of a police department.

The Police Civil Service Act, Act of June 5, 1941, P.L. 84, *as amended*, 53 P.S. §53251 et seq., was enacted at a time when police officers enjoyed no civil service or job tenure and were subject to peremptory dismissal. This Act was, however, not applicable to boroughs employing less than three police officers. Where it applied, it granted to police officers tenure rights, limited the grounds for which a police officer could be dismissed, disciplined, etc., following specified procedural prerequisites and otherwise regulated the conduct of municipalities vis-a-vis their police officers. In 1951, the Police Tenure Act, applicable, *inter alia*, to boroughs employing less than three police officers, was enacted and extended to the police officers of such boroughs the basic protections of the Police Civil Service Act. *See generally George v. Moore,* 394 Pa. 419, 147 A.2d 148 (1959); Manke, *Removal, Suspension or Demotion of a Municipal Police Officer: A Review and Analysis,* 79 Dick. L. Rev. 380 (1975).

The pertinent sections of the Police Tenure Act, Sections 2 and 3, 53 P.S. §§812-813, provide, respectively, the grounds upon which a police officer may be "suspended, removed or reduced in rank," and the order in which police officers shall be removed when a reduction in force "shall be deemed necessary" "for reasons of economy or other reasons." Nowhere in these sections is there addressed the issue of a borough's power to abolish its police department. Nor

can we find said issue addressed in any other section of the Code. We find without merit, however, appellants' arguments that abolition is tantamount to reduction for purposes of compliance with the Police Tenure Act. In *Shaulis v. Indian Lake Borough,* 32 Somerset 271, 274 (1976), this precise point was addressed:

There is no provision in the Police Tenure Act which prohibits or limits or in any way applies to the abolition of a police department. Although abolition has the indirect effect of dismissal of all police officers, the provisions of the statute presuppose the continued existence of the department and reach only direct actions of dismissal or suspension from an existing police force. Accordingly, it was the legislative intent of the Act only to provide job security in such direct action situations and not to interfere with a bona fide legislative decision on the part of a Borough to disestablish its police force nor to require a Borough always to maintain a police force once established.

We agree with this reasoning and adopt it as our own.

Also without merit is the argument that the Ordinance impinges upon the powers vested in the Mayor by Sections 1029 and 1121 of the Code. Neither section limits the powers vested in Council with regard to the establishment or disestablishment of a police department, and Section 1121 vests in the Mayor only the power to "direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties. . . ." While these sections may presuppose the existence of a police department, they do not mandate its existence or compel its continuation once established.

Having concluded that the Police Tenure Act does not control when a police department is abolished by the bona fide exercise of legislative power by a bor-

ough council and that no other positive law of the Commonwealth is violated thereby, we still must find a grant of authority under which a borough may so act. A municipal corporation exists by the grace of the Commonwealth which may withdraw or limit the power enjoyed by such bodies. *Borough of Hummelstown v. Lower Dauphin School District*, 24 Pa. Commonwealth Ct. 486, 357 A.2d 727 (1976). A municipal corporation enjoys only those powers expressly granted, those necessarily implied by or incident to such expressly granted powers, and those essential to the fulfillment of the corporate purposes and its continued existence. *Knauer v. Commonwealth*, 17 Pa. Commonwealth Ct. 360, 332 A.2d 589 (1975). We believe that the Borough had authority to abolish its police department under Section 1006(3) of the Code, 53 P.S. §46006(3), which empowers the Council "[t]o enact, revise, repeal and amend . . . ordinances . . . not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough. . . ." Also available as a source of authority for the Council's actions is Section 1202(74) of the Code, which authorizes the Council

> [t]o make and adopt all such ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the borough and its finances, and the maintenance of peace, good government, safety and welfare of the borough and its trade, commerce and manufactures.

The Council's action taken pursuant to these grants of power and what may be necessarily inferred from them, are presumed to be valid. *Clearview Bowling Center, Inc. v. Hanover Borough*, 430 Pa. 579, 244 A.2d 20 (1968). We are limited in our review to the ques-

tion of whether the Council has stepped beyond the limits of the law and we may not pass upon the wisdom of its actions nor on debatable issues of policy. *Commonwealth v. Sterlace*, 24 Pa. Commonwealth Ct. 62, 354 A.2d 27 (1976). Accordingly, having found that the Council has acted within the scope of its power, and having found no positive law of the Commonwealth violated thereby, we must affirm the lower court.

Appellant Mayor raises in this Court for the first time the argument that the Ordinance was passed in violation of the Sunshine Act, Act of July 19, 1974, P.L. 486, *as amended*, 65 P.S. §261 et seq. This issue is not properly before this Court. *Commonwealth v. DeMuro*, 24 Pa. Commonwealth Ct. 480, 357 A.2d 270 (1976) (allocatur denied).

ORDER

Now, January 31, 1978, the orders of the court below are hereby affirmed.