Nancy T. McFarland et al., Appellants *v.* A. Russell Parkhouse et al., Appellees.

Argued September 12, 1984, before Judges WILLIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

468

*Richard C. Sheehan,* for appellants.

*Roger B. Reynolds, Jr.,* with him, *Roger B. Reynolds,* for appellees.

OPINION BY JUDGE CRAIG, October 15, 1984:

The Board of Supervisors of Lower Providence Township (township) appeal an order of the Court of Common Pleas of Montgomery County which dismissed an equity action to enjoin Montgomery County Commissioners, appellees here, from erecting a new prison complex on county-owned land in the township. Although we have been asked to address a number of issues, we need only resolve the question of whether as a matter of law the Second Class County Code[1] per-

[1] Second Class County Code, Act of July 28, 1953, P.L. 723, §§101-2902 *as amended,* 16 P.S. §§3101-6302.

mits the commissioners to construct a prison on county-owned property within the county but not at the county seat. We conclude that it does.

The present prison, located at the county seat of Norristown, is over 130 years old, overcrowded and in need of replacement. In September, 1980, the commissioners created a site selection committee to recommend alternatives to the present outmoded structure.

In October, 1980, the number of sites under consideration was reduced to two: a "downtown site" in Norristown and a "farm site" away from the county seat on land acquired by the county over a number of years and currently used for a prison work farm, housing approximately thirty-five work-release inmates, and for other county purposes.

Although the majority of the site selection committee members favored the "downtown site," the committee made no final recommendation regarding site selection.

At a press conference held by the commissioners to announce a public hearing to be conducted in Lower Providence Township, the individual commissioners responded to reporters' questions. The press gave the impression that the commissioners had made a final decision regarding location of the new prison.

Relying on that report, the township immediately filed the equity action involved here. Actually, the

---

In 1967, Montgomery County, then a third class county governed by the County Code, Act of August 9, 1955, P.L. 323, *as amended*, §§101-3100, 16 P.S. §§101-3100, was reclassified by virtue of the Act of October 20, 1967, P.L. 472, providing that the class of counties having a population from 500,000 to less than 800,000 (which embraces Montgomery County) be designated as Second Class A counties. That reclassification also resulted in Montgomery County being governed by the Second Class County Code, which was amended for this purpose.

commissioners did not reach their final decision until nearly six months later.

The Act of September 10, 1784[2] provided for the creation of Montgomery County. Section X of that act provided that "it shall and may be lawful . . . to purchase and take assurance to them and their heirs in the name of the Commonwealth of a piece of land . . . and thereon to erect and build a courthouse and prison, sufficient to accommodate the public service of the said county.'' That section, when read together with sections XI and XII, which provided for the funding of the courthouse and prison, lead us to conclude that the act related only to the initial creation and organization of Montgomery County. We cannot infer, as the township does, that this legislation was intended forever to designate the only permissible location for the county's prison.

In the Act of April 4, 1807,[3] the legislature gave counties direct authority to build prisons without mention of location. The first County Code, enacted in 1834, transferred to each county the titles of prisons such as the jail authorized in the 1784 statute creating Montgomery County, where a trustee had held title in the name of the Commonwealth. Additionally, the 1834 statute required prisons to be located at the "seat of justice," and allowed the purchase of land for that purpose.[4]

---

[2] An Act for erecting part of the county of Philadelphia into a separate county, Act of September 10, 1784, 2 Sm. L. 267.

[3] A further supplement to the penal laws of this state, Act of April 4, 1807, 4 Sm. L. 393, *repealed by* the Act of March 31, 1860, P.L. 427, §79.

[4] An Act relating to counties and townships and county and township officers, Act of April 15, 1834, P.L. 537, §§9, 10, *formerly* 16 P.S. §§8301, 8321, *repealed by* the Act of April 28, 1978, P.L. 202, §2(a)[137].

The Act of June 1, 1883[5] broadened the 1834 provisions by allowing county commissioners to purchase land for prisons and other county buildings "at the county seat." This 1883 act, as amended in 1921, allowed county commissioners to purchase *"ground at or near the county seat for the purpose of the erection of such* other building or buildings as may be necessary and proper for the purposes of a county jail or workhouse. . . ."* (Underscoring [Italics] in original indicating addition by amendment).[6] The legislature essentially retained the same provision in the General County Law of May 2, 1929,[7] then governing Montgomery County.

In 1955, the County Code governing counties of the third through eighth classes, then including Montgomery, continued the authorization of jail construction "at the county seat or elsewhere" and added the clause "as authorized by law."[8] The Second Class County Code, passed in 1953, contains identical language:

(a) The county commissioners may purchase, take by gift, devise or by the power of eminent domain, in accordance with the provisions of this act, *such real property at the county seat or in such other places, as may be authorized by law, as they deem necessary for the purposes of the county courthouse, county jail, prison,*

---

[5] Act of June 1, 1883, P.L. 58, §1, *formerly* 16 P.S. §8341, *repealed by* the Act of April 28, 1978, P.L. 202, §2(a) [721].

[6] Act of April 21, 1921, P.L. 271, §1 *formerly* 16 P.S. §8341 *repealed by* the Act of April 28, 1978, P.L. 202, §2(a) [721].

[7] The General County Law, Act of May 2, 1929, P.L. 1278, Art. VIII, §566, *formerly* 16 P.S. §566, *repealed by* the Act of August 9, 1955, P.L. 323, §2305.

[8] The County Code, Act of August 9, 1955, P.L. 323, *as amended*, §2305, 16 P.S. §2305.

*workhouse, detention house or other county building,* either in acquisition of a building suitable for such purposes or in the construction of a new building, or in the alteration, including enlargement, of an existing county building. Any purchase herein authorized shall be subject to the approval of the court of common pleas of the county as to purchase price, and no such contract shall bind the county, nor shall any conveyance be valid until the court has so approved the purchase price.

(b) The county commissioners *may also use any real property at the county seat or elsewhere, as authorized by law,* owned by the county, and deemed suitable by them for the purposes aforesaid, except such property as is bound by contract to another public use. (Emphasis added.)

Second Class County Code, Act of July 28, 1953, P.L. 723, §2505, 16 P.S. §5505.

This statute clearly allows the county commissioners to use county-owned real property at places other than the county seat. The addition of the clause "as authorized by law" does not mean that a specific statute passed by the state legislature is necessary to validate the commissioners' action to use the county property for a jail. Rather, "as authorized by law" means action by the commissioners within the sphere of their legal authority. Absent inconsistent state legislation, legal authority may be established by relevant *county* action, which is what occurred here. We cannot perceive the intent of the legislature to be otherwise because "[t]o do so would prove a great impediment to a flexible government, responsive to changing conditions and needs." *City of Pittsburgh*

*v. County of Allegheny,* 49 Pa. Commonwealth Ct. 442, 446, 412 A.2d 655, 657 (1980).

The township contends that present uses of the site constitute a contractual commitment barring new uses and that these contracts took effect while Montgomery County was a third class county governed by the 1955 County Code. We believe, as did Judge Hess, that this argument is without merit because "such present use is not by contract but is 'at will' of the county."

Even if there were a previously contracted use, it would be limited to the property actually so used and would not bind the county from alternative uses for the remainder of the parcel.

As our court has recently stated:

Moreover, we do not see that the policy declarations attendant upon the acquisition of a property, nor the county's compliance with the law pertaining to its intentions, impose a trust or conditions on the county's title so as to preclude all public uses except that intended at the time of acquisition.

*City of Pittsburgh,* 49 Pa. Commonwealth Ct. at 446, 412 A.2d at 657.

The township's position is further eroded by section 405 of the Second Class County Code, 16 P.S. §3405, which calls for the central governing and administrative offices to be quartered at the county seat, without mentioning prisons. We are satisfied that the failure of this statute to mention any of the other offices and agencies provided by a large county means that only the enumerated administrative offices must be located at the county seat. By inference, other county offices and facilities may be located elsewhere within the county.

Our resolution of the legal interpretation issue also disposes of the township's subordinate issues.

The trial judge was correct in refusing to admit the site selection committee minutes. The minutes are not relevant because section 2505 of the Second Class County Code, 16 P.S. §5505, commits the decision to the county commissioners without limitation, and there are no limitations except as authorized by law. The minutes are not relevant to any statutory criterion that the commissioners are required to observe.

The township has failed to establish any breach of the commissioners' fiduciary obligation. The prison location is a question of policy and the allegations of impropriety are unsupported. We are limited in our review to the question of whether the commissioners stepped beyond the limits of the law and "we may not pass upon the wisdom of their actions on debatable issues of policy." *Myers Appeal,* 33 Pa. Commonwealth Ct. 430, 438, 382 A.2d 145, 148 (1978).

The trial judge was plainly within his power to correct an oversight by reimposing costs upon the township. The Judicial Code[9] calls for imposition of costs, in general, on the losing party. This case does not fall within any exception.

Judge HESS' sound decision is affirmed.

## ORDER

Now, October 15, 1984, the order of the Court of Common Pleas of Montgomery County, dated November 30, 1982, is affirmed.

---

[9] Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, §2, *as amended,* 42 Pa. C. S. §1726(2)(ii).