Robert J. KEE, Ruth E. Kee, Ruth Mixell, Keith S. Koegel, Cynthia A. Koegel, Morgan B. Price and Darcie E. Frye, Petitioners,

and

Township of West Pennsboro, Intervenor/Petitioner,

v.

PENNSYLVANIA TURNPIKE COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Dec. 31, 1998.

Reargument Denied Jan. 29, 1999.

John H. Broujos, Carlisle, for petitioners.

Gabriel L.I. Bevilacqua, Philadelphia, for respondent.

Steven J. Fishman, Carlisle, for intervenor.

Before SMITH, J., KELLEY, J., and McCLOSKEY, Senior Judge.

SMITH, Judge.

The Pennsylvania Turnpike Commission (Commission) has filed a motion for partial summary judgment in the action by Petitioners Robert J. Kee et al. in this Court's original jurisdiction seeking equitable relief against the Commission in relation to its substantial expansion of a rest stop along the Turnpike. The Commission asserts that it is entitled to judgment as a matter of law against the Petitioners and Intervenor Township of West Pennsboro (Township) on claims based upon the contention that the Commission is required to comply with the Township's zoning ordinance. In the alternative, the Commission contends that the record shows that it has acquired a variance by estoppel for the disputed construction.

## I

The Commission began making plans in 1988 to expand the Plainfield Plaza rest stop (Plaza) located on the eastbound side of the Turnpike a few miles west of Exit 16, Carlisle.[1] A parking report prepared by consultants and submitted to the Commission in 1988 stated that inadequate parking had led to the dangerous practice of trucks' parking on the deceleration ramp or in any other available spaces, sometimes blocking exits. During 1990 and 1991 the Commission purchased land adjacent to the Plaza and to land of some of Petitioners. The Plaza and nearby properties are located in a Village zoning district. The Plaza was constructed in the 1950s, and it has been a lawful non-conforming use since the Township's adoption of zoning ordinances in 1985 and 1993.

In a letter of June 6, 1991, the Township's Solicitor stated that the Board of Supervisors

was anxious to review plans for the project to determine their adequacy in addressing issues of noise and water pollution, sewage and storm water management. On July 2, 1991, the Commission sent the Solicitor a set of pre-final plans and also reports for the expansion project, including an environmental overview report. It sent the same materials to the Township Manager in October 1991. A letter of September 19, 1991 from the Township's representative to the Commission's Assistant Chief Engineer stated:

[T]he Board of Supervisors of West Pennsboro Township indicated that they are not in a position to give approval to the plans as presented to the Township without the project first being presented to the Township Planning Commission through the land development process. It also appears that there might be the requirement of the Turnpike obtaining West Pennsboro Township Zoning Hearing Board approvals for possibly a special exception/variance to the expansion of the parking facilities.

Petitioners' Appendix at p.1. In an internal memorandum of September 24, 1991, the Commission's Assistant Chief Engineer stated to the Chief Counsel that, because of residents' lack of support for the project, he was sure that it would not be approved if the Commission were required to comply with land development and zoning ordinances. He requested a legal opinion from counsel. Petitioners' Appendix at p. 5. On November 10, 1992, the Chief Engineer wrote to the Township Manager that counsel had informed the Commission that it need not comply with the application process but that it should comply with design requirements, and he stated that if the Commission did not receive a response by November 30, 1992, it

---

1. The Court previously addressed this matter when it granted in part Petitioners' application for a preliminary injunction by order of September 5, 1996, followed by an opinion of November 8, 1996 (Preliminary Injunction Opinion). *Kee v. Pennsylvania Turnpike Commission* (No. 237 M.D.1996, filed November 8, 1996) (Keller, S.J.). The order did not enjoin further work on the nearly completed expansion project, but it enjoined use of the new facilities. When the Commission was found to have willfully violated the preliminary injunction order, the Court granted the Petitioners' first petition to hold the Commission in contempt of court. *Kee v. Pennsylvania*

*Turnpike Commission* (No. 237 M.D.1996, filed November 6, 1996) (Keller, S.J.). These orders were affirmed per curiam at 548 Pa. 550, 699 A.2d 721 (1997). Also, in an opinion and order of November 20, 1996, the Court denied the Commission's various preliminary objections. *Kee v. Pennsylvania Turnpike Commission,* 685 A.2d 1054 (Pa.Cmwlth.1996). Although the parties offer different interpretations of the course of dealings between them, they do not dispute the authenticity of the letters, memoranda and other documents offered into evidence in the preliminary injunction proceeding.

would assume that the Township approved the plans as submitted and would proceed. Commission's Appendix at p. 85.

In November 1995 the Township requested that the Commission consider a list of citizen concerns. On December 26, 1995, the Commission wrote to the Chair of the Board of Supervisors, stating that the concerns had been addressed at a public meeting on December 5, 1995 and that no formal response was required. The Plaza expansion project commenced on or about October 31, 1995, and it was substantially completed by November 25, 1996 at a cost of approximately $3,500,000. The project completely removed a stand of trees and underbrush that had served as a barrier between the Plaza and nearby residences. It also provided for parking of numerous tractor-trailers facing toward the residences, with no barrier for lights or fumes from the trucks, and for four 100–foot–high light standards without shielding.

## II

Pursuant to Pa. R.C.P. No. 1035.2, any party may move for summary judgment in whole or in part whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery or expert report, or if, after the completion of discovery relevant to the motion, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense that in a jury trial would require the issues to be submitted to a jury. An entry of summary judgment may be granted only in cases where the right is clear and free from doubt. *Davis v. Brennan*, 698 A.2d 1382 (Pa.Cmwlth.1997). The moving party has the burden of proving the non-existence of any genuine issue of material fact. *Id.* The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved

against the moving party. *Schnupp v. Port Authority of Allegheny County*, 710 A.2d 1235 (Pa.Cmwlth.1998). Parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial. *Sovich v. Shaughnessy*, 705 A.2d 942 (Pa.Cmwlth.1998).

The Commission asserts that it, as an instrumentality of the Commonwealth and under the facts of this case, is not required to follow local zoning ordinances under the standard set forth in *Commonwealth, Department of General Services v. Ogontz Area Neighbors Ass'n*, 505 Pa. 614, 483 A.2d 448 (1984).[2] In that case local authorities denied applications on behalf of the Department of Public Welfare for permits to construct a facility for mentally handicapped persons in a residential area in the City of Philadelphia. The Supreme Court repeated an earlier explanation that because both state agencies and municipal corporations, along with their specific powers, are created by the legislature through statutes, "the conflict that arises when a Commonwealth agency seeks to utilize real property in a manner that conflicts with a municipal corporation's zoning regulations is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state." *Ogontz*, 505 Pa. at 622, 483 A.2d at 452. The task of the courts in such cases is to determine, through an examination of the applicable enabling statutes, which of the entities the legislature intended to have pre-eminent powers. *Id.* at 623, 483 A.2d at 452.

Overruling earlier precedent that employed balancing tests, the Supreme Court stated that standard rules of statutory construction are to be applied. In particular, the Supreme Court applied Section 1921(c)(6) of the Statutory Construction Act of 1972, 2 Pa.C.S. §1921(c)(6), which permits a court, when interpreting a provision whose words

---

**2.** Petitioners assert that decision of this issue is premature because they have outstanding interrogatories to which the Commission responded with all-encompassing objections rather than answers. In view of the parties' reliance upon the extensive evidence and findings in the preliminary injunction proceeding, however, the Court concludes that the record is sufficiently developed to permit a resolution of this issue.

are not explicit, to consider the consequences of a particular interpretation as an aid to ascertaining legislative intent. The Supreme Court concluded that the consequence of adopting the agency's interpretation would be to frustrate the municipality's land use plan whenever a Commonwealth land use plan was in conflict. By contrast, enforcing the municipality's plan likely would not frustrate the statutory mental health program that the Department of Public Welfare was implementing – only one prospective location was being lost. Such a ruling would give effect also to the legislative mandates authorizing the City's zoning ordinance and enforcement powers. The Supreme Court concluded that the legislature intended for the local zoning authority to be pre-eminent in that case.

The Commission relies heavily upon *Borough of Tunkhannock v. County of Wyoming*, 96 Pa.Cmwlth. 243, 507 A.2d 438 (1986), where this Court applied *Ogontz*. There a county that had operated a prison as a non-conforming use for many years proceeded with construction of a new prison on the same lot despite denial of a variance. The Court noted that the county's authority to acquire and use property for county purposes derived from Sections 2305 and 2315 of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§2305 and 2315. The provisions in these sections for the county commissioners to acquire and use property "as authorized by law" were almost identical to provisions in the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §§3101 – 6202, which this Court had recently held in *McFarland v. Parkhouse*, 85 Pa.Cmwlth. 467, 482 A.2d 1177 (1984), to mean action by the commissioners within their legal sphere of authority and to give the county pre-eminent power over a township to determine a prison's location. The Court concluded that 16 P.S. §2315 similarly accorded this county pre-eminent power to choose to build a larger prison on the site

of the current prison. Further: "We are especially persuaded by the fact that the prison has existed on the property for nearly one hundred and twenty years and has represented a pre-existing, non-conforming use since the ordinance's enactment." *Borough of Tunkhannock*, 96 Pa.Cmwlth. at 251, 507 A.2d at 442.

The Commission notes that here also the Plaza has been a non-conforming use for many years. It points to evidence indicating that the Commission undertook the expansion of the Plaza because of safety concerns. The legislature, the Commission notes, has expressly stated in Section 6 of the Turnpike Organization, Extension and Toll Road Conversion Act (Turnpike Act), Act of September 30, 1985, P.L. 240, *as amended*, 36 P.S. §651.6, that the Commission's "construction, operation and maintenance of the turnpikes ... shall be deemed and held to be an essential governmental function of the Commonwealth."[3] Petitioners respond that zoning authority has been conferred upon municipalities in order to protect and promote safety, health and morals and to provide for the general welfare, among other purposes. *See* Sections 105 and 604 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10105 and 10604. The Commission, they note, has cited to no provision of the Turnpike Act that demonstrates a legislative intent that the Commission should be untouchable by local land use ordinances.

In the absence of any express statutory language giving the Commission pre-eminence, Petitioners agree that the *Ogontz* analysis must be applied. They dispute the Commission's reliance upon *Borough of Tunkhannock* and note that in the present case the expansion was in part on to land that the Commission recently acquired, long after the adoption of the applicable zoning ordinances.[4] Further, Petitioners cite cases

---

3. In addition, Section 1 of the Act of September 8, 1959, P.L. 828, *as amended*, 36 P.S. §652t, provides that the health, safety and welfare of the citizens would be promoted by the Commission's undertaking projects from time to time to improve the safety of the Pennsylvania Turnpike

System and to provide better and more efficient service for its users.

4. Petitioners contend that Commission actions in violation of local land use ordinances are unlawful per se and that they therefore may not be deemed to serve the general welfare, citing

where particular statutes have been held not to preempt local zoning regulation, *e.g.,* *Board of Comm'rs of Ross Township v. Harsch,* 78 Pa.Cmwlth. 395, 467 A.2d 1183 (1983) (holding that review of the statutes and regulations relating to public welfare showed no basis for an inference that the legislature intended to so restrict the police powers of municipalities in the area of day-care regulation that municipalities might not impose zoning requirements). Although the present case does not present a classic pre-emption question – the Township is not attempting to regulate the operation of turn-pikes—*Ross Township* and the other cases cites illustrate the great importance that the courts attach to municipalities' exercise of their zoning authority, an equally essential governmental function.

■ The Court agrees with Petitioners that the present circumstances do not show that the Commission should be free from the operation of local land use ordinances. This Court has long recognized that "[z]oning laws are founded upon the constitutional principles of the police powers of government to protect the public health, morals, safety and general welfare." *Forks Township Board of Supervisors v. George Calantoni & Sons, Inc.,* 6 Pa.Cmwlth. 521, 297 A.2d 164 (1972). In the present case the Commission's proceeding on the assumption, never tested in court, that it could ignore such local police power enactments has led to the frustration of the Township's zoning scheme and to injury sufficient to merit the imposition of a preliminary injunction. Questions of the precise scope and design and impact of the project, which could have been addressed in proceedings pursuant to the land use ordinances, were not addressed. The Commission's enabling legislation does not expressly confer upon it the power to disregard local land use regulation, regardless of the consequences, and the Court is convinced that the legislature did not intend for the Commission's authority to be pre-eminent over that of the Township here.

*Commonwealth v. Coward,* 489 Pa. 327, 414 A.2d 91 (1980). This argument misses the point that if the Court should determine that the legislature intended for the Commission's authority to be pre-eminent, then the failure to comply

### III

The next question may be more easily answered. The Commission asserts that it has acquired a right to a variance by estoppel. Acknowledging that municipal inaction alone is not sufficient to create such a right, *Caporali v. Ward,* 89 Pa.Cmwlth. 621, 493 A.2d 791 (1985), the Commission notes the factors that are generally considered: (1) municipal inaction over a long period or active acquiescence in illegal use of property; (2) good faith conduct by the property owner throughout the proceedings; (3) innocent reliance by the property owner, as evidenced by substantial expenditures; and (4) unnecessary hardship resulting from denial of a variance. *Anderson v. Zoning Hearing Board of Hampton Township,* 690 A.2d 1328 (Pa.Cmwlth.1997).

■ Petitioners and the Township have submitted counter-affidavits on the present motion for summary judgment. Those on behalf of the Township are by present and former officials, including Chairman of the Board of Supervisors Walter N. Heine, Supervisor Gerald A. Barrick, Township Manager Mitchell L. Hoffman and Member of the House of Representatives Albert H. Masland, whose help the residents sought in their dealings with the Commission. These affidavits allege that the Township at no time was indifferent to the Plaza expansion project, that the Commission proceeded with construction, in particular the cutting down of trees, after giving assurances that there were no immediate plans for construction, and that the Commission gave the impression of interest in the citizens' concerns and willingness to be flexible but then constructed the project essentially without modification. The Court believes that, at a minimum, such allegations raise material issues of fact as to the good faith conduct of the Commission in the course of its dealings with Petitioners and the Township, which precludes the determination of this issue as a matter of law on

with local ordinances would not be unlawful. Conversely, as was noted in the preliminary injunction proceeding, by not complying with ordinance requirements the Commission proceeded at its own risk.

summary judgment. Accordingly, the motion of the Commission for summary judgment is denied. The Chief Clerk shall be directed to schedule a pre-trial conference in this matter.

### ORDER

AND NOW, this 31st day of December, 1998, the motion of the Pennsylvania Turnpike Commission for summary judgment is denied. The Chief Clerk is directed to schedule a pre-trial conference in this matter.

Dissenting opinion by Judge KELLEY.

KELLEY, Judge, dissenting.

I respectfully dissent.

I believe that the legislature intended, through the Commission's enabling legislation and other statutory enactments, for the Commission's authority to be pre-eminent over that of municipalities such as the township in this case.

The Commission was created in 1937 by the Act of May 21, 1937, P.L. 774, *as amended*, 36 P.S. §§ 652a – 652q, commonly referred to as the Pennsylvania Turnpike Commission Act. Therein, the legislature created the Commission as an instrumentality of the Commonwealth and "the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth." Section 4 of the Pennsylvania Turnpike Commission Act, 36 P.S. § 652d. One of the powers conferred upon the Commission was the power to acquire real property deemed necessary or convenient for the construction or the *efficient operation of the turnpike*. Sections 5 and 6 of the Pennsylvania Turnpike Commission Act, 36 P.S. §§ 652e–652f (emphasis added). Moreover, when acquiring real property from a municipality, which may be necessary or convenient to the effectuation of the authorized purposes of the Commission, including real property already devoted to

public use, the legislature granted the Commission the power to acquire such property without the necessity for any advertisement, order of court or other action, or formality other than the regular and formal action of the authorities concerned. Section 6 of the Pennsylvania Turnpike Commission Act, 36 P.S. § 652f.

In 1978, the legislature enacted the Act of November 26, 1978, P.L. 1411. Section 1 of this act provides that "[t]he health, safety and welfare of the citizens of Pennsylvania would be promoted by the Pennsylvania Turnpike Commission undertaking projects from time to time designed to improve the safety of the Pennsylvania Turnpike System and provide better and more efficient service for its users." 36 P.S. § 652t.

More recently in 1985, the legislature enacted the Turnpike Organization, Extension and Toll Road Conversion Act (Turnpike Act), Act of September 30, 1985, P.L. 240, *as amended*, 36 P.S. §§ 651.1–651.20.[1] In section 6 of the Turnpike Act, the legislature again expressly states that "[t]he exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpikes and in effecting toll road conversions shall be deemed and held to be an essential governmental function of the Commonwealth." 36 P.S. § 651.6. The Turnpike Act also confers upon the Commission all the powers and duties prescribed by the Pennsylvania Turnpike Commission Act.

Based on the foregoing, I believe that it is clear, as a matter of law, that the legislature intended to confer upon the Commission the authority to construct and improve the turnpike for, among other things, safety concerns without the necessity of complying with local zoning laws. To conclude otherwise would stifle the Commission's obligations and duties under the law to facilitate vehicular traffic within and across the Commonwealth by providing for the construction, reconstruction, improvement, operation and maintenance of the turnpike.

I recognize, as pointed out by the majority herein, that the zoning laws are founded

---

1. The Turnpike Act repealed entirely certain sections of the Pennsylvania Turnpike Commission Act and repealed other sections, such as section 4, only insofar as the sections are inconsistent with the Turnpike Act.

upon the constitutional principles of the police powers of government to protect public health, safety and general welfare. *Forks Township Board of Supervisors v. George Calantoni & Sons,* 6 Pa.Cmwlth. 521, 297 A.2d 164 (Pa.Cmwlth.1972). I also recognize that the Commissioner's enabling legislation does not expressly confer upon it the power to disregard local land use regulation.[2] However, the Commission's enabling legislation and subsequent legislation charges the Commission with the duty to construct, reconstruct, improve and maintain the turnpike. In order to do so, the Commission must be afforded the ability to proceed without regard to local zoning laws. Otherwise, the Commission's power would be subrogated to the laws of each municipality along the length of the turnpike resulting in the Commission having to carry out its essential governmental function in piece-meal fashion. This would result in the local zoning laws being pre-eminent over the Commission's powers as set forth in the law.

Accordingly, I would grant the Commission's motion for partial summary judgment.

---

**2.** I note that the Commission's enabling legislation and subsequent legislation also do *not* specifically state that the Commission is subject to local zoning or land use regulation.