## O'Donnell v. Lehigh Valley Rail Management, LLC

C.P. of Lycoming County, No. C-48-CV-2010-14005

*Gerard J. Martillotti*, for plaintiffs.

*J. Lawson Johnston* and *Christopher Hoare*, for defendants.

BARATTA, *J.*, October 22, 2013—This matter is a personal injury action arising out of an incident that allegedly took place on or about January 10, 2009. The facts giving rise to this action are as follows:

The plaintiffs, Gerard O'Donnell and Colleen O'Donnell, filed their complaint on December 15, 2010 and reinstated it on January, 11, 2011 against the defendants Lehigh Valley Rail Management LLC ("LVRM") and Lehigh Valley Industrial Park ("LVIP") (collectively referred to as the "Lehigh Valley defendants"). According to count I of the complaint, plaintiff Gerard O'Donnell ("Mr. O'Donnell") was employed by Delaware and Hudson Railway Company, Inc. d/b/a/ CP Rail System ("D&H" or "Canadian Pacific") at all times relevant to this cause of action. On the day of the incident, January 10, 2009, at approximately 1:00 a.m., Mr. O'Donnell and his crew members allegedly went to the LVRM facility to re-crew and pick up their locomotive engines (the "power") that had been left by a prior crew. As Mr. O'Donnell commenced with his work, he allegedly stepped in a hole

and the ballast gave way, allegedly causing him injury after he hyperextended his knee. According to the complaint, the injury occurred when Mr. O'Donnell, "despite his best efforts, was unable to maintain his footing due to the hazardous conditions in and around the rail area." Mr. O'Donnell further avers that his injuries resulted from the Lehigh Valley defendants' negligent acts and omissions, and their failure to provide him with a safe place to work, among other acts of negligence. As a result, the plaintiffs demand judgment against the Lehigh Valley defendants in an amount in excess of fifty thousand dollars ($50,000.00), plus interest and costs.

In count II of the complaint, plaintiff Colleen O'Donnell ("Mrs. O'Donnell") presents a loss of consortium claim. The plaintiffs allege that they are lawfully married and reside together as husband and wife. Mrs. O'Donnell further avers that "[a]s a direct result of all negligent acts and omissions by the defendants as herein alleged," she has suffered "the loss of society and services of [Mr. O'Donnell]."

On February 11, 2011, the Lehigh Valley defendants filed their answer with new matter to plaintiff's complaint, denying ownership of the area in question and stating that they did not owe a duty of care to the plaintiffs. (*See* defendants' answer with new matter to plaintiff's complaint at ¶¶ 5, 27, 34.) On April 21 2011, LVRM and LVIP joined Canadian Pacific as an additional defendant in this action, bringing claims for indemnification and contribution based on a contract. (*See* writ joining additional defendant). Depositions and a site inspection conducted in August and September 2011 revealed that Norfolk Southern Rail, Inc. ("Norfolk Southern") owned the tracks closest to the area where Mr. O'Donnell alleged

sustained his injuries (hereinafter referred to as "Valley 18").

Deposition testimony occurring in August and September 2011 revealed information about the ownership and control of Valley 18. John Gregory Robertson, director of operations at LVRM, testified that he did not know if Norfolk Southern had ever been contacted by either LVRM or Canadian Pacific about using Valley 18. (*See* deposition testimony of John Gregory Robertson 09/07/2011 at 18.) Patrick R. Loughlin, manager of LVRM, testified that LVRM's discretion as to the location of the storage of the power "had changed through the years as this operation has changed," and that "up until two years ago, all traffic was taken up Valley 18 and dropped off to the Shimersville yard." (Deposition testimony of Patrick R. Loughlin 07/14/11 at 9-10.) Mr. Loughlin further demonstrated on a series of maps that Valley 18 was owned by Norfolk Southern. (*See id.* at 27-44.)

On October 11, 2011, the plaintiffs filed their amended complaint joining Norfolk Southern as an additional defendant. The plaintiffs filed a second amended complaint on February 23, 2013. In both of their responsive pleadings to the amended complaint and the second amended complaint, LVRM and LVIP denied ownership and control of valley 18. (*See* LVRM and LVIP answer and new matter to complaint ¶¶ 5-7; *see also* LVRM and LVIP answer and new matter to second amended complaint ¶¶ 5-7.)

On June 13, 2013, defendant Norfolk Southern's motion for summary judgment was granted by this court. As a result, all of the claims against Norfolk Southern were dismissed with prejudice.

On June 21, 2013, LVRM and LVIP filed their motion

for summary judgment, along with their supporting brief, and a praecipe to list case for argument. On July 17, 2013, the plaintiffs filed an opposition to defendants' motion for summary judgment and a supporting brief. On August 27, 2011, the Lehigh Valley defendants filed a reply brief in this court.

This matter was placed on the September 3, 2013 argument list for a determination based on the oral argument and briefs.

## Legal Standard

Pennsylvania Rule of Civil Procedure 1035.2 states:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury.

Further, under Pa.R.C.P. Rule 1035.3(a), the nonmoving party may not rest upon mere allegations or denials of the pleadings but must file a response within thirty (30) days after service of the motion. In other words, the nonmoving party has a clear and affirmative duty to respond to a

motion for summary judgment. *Harber Phila. Ctr. City Office Ltd. v. LPCI Ltd. P'ship*, 764 A.2d 1100, 1104 (Pa. Super. Ct. 2000). Also, Pa.R.C.P. Rule 1035.3(d) specifically provides that "[s]ummary judgment may be entered against a party who does not respond." *Id.*

Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176 (Pa.1999) (citing *Marks v. Tasman*, 589 A.2d 205 (Pa. 1991)). Summary judgment is only appropriate in the clearest of cases, because an order favorable to the moving party will prematurely end an action. *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) (citations omitted). The moving party has the burden of proving the non-existence of any genuine issue of material fact. *O'Rourke v. Pa. Dep't of Corr.*, 730 A.2d 1039, 1041 (Pa. Commw. Ct. 1999) (citing *Kee v. Turnpike Comm'n*, 722 A.2d 1123 (Pa. Commw. Ct. 1998)). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof...establishes the entitlement of the moving party to judgment as a matter of law." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (quoting *Young v. PennDOT*, 744 A.2d 1276, 1277 (Pa. 2000)) (omission in original) (internal quotation marks omitted). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1041 (Pa. 1996) (citation omitted).

Under the *Nanty-Glo* Rule, summary judgment may not be granted where the moving party relies exclusively

on oral testimony, either through testimonial affidavits or deposition testimony to establish the absence of a genuine issue of material fact. *Nanty-Glo Borough v. American Surety Co.*, 163 A.523, 524 (Pa. 1932); *see also Penn Center House, Inc. v. Hoffman*, 553 A.2d 900, 903 (Pa. 1989); *White v. Owens Corning Fiberglas, Corp.*, 668 A.2d 136, 142 (Pa. Super. Ct. 1995); *Garcia v. Savage*, 586 A.2d 1375, 1377-78 (Pa. Super. Ct. 1991); *O'Rourke*, 730 A.2d at 1041 (citing *Kaplan v. Se. Pa. Transp. Auth.*, 688 A.2d 736 (Pa. Commw. Ct. 1997)).

A trial court's entry of summary judgment will only be reversed in instances where there was an abuse of discretion or an error of law by the trial court. *Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 795 (Pa. Super. Ct. 1999) (citing *Sebelin v. Yamaha Motor Corp.*, 705 A.2d 904, 906 (Pa. Super. Ct. 1998)).

## Discussion

Lehigh Valley Industrial Park (LVIP) owns and operates an industrial park which is serviced by freight trains. In fact, there are train tracks which traverse the LVIP property. However, the record also establishes that Norfolk Southern owns the train track at the property line of LVIP; in other words, once a train leaves the border of LVIP, the train then travels upon property under the possession of Norfolk Southern and upon tracks owned by Norfolk Southern.

Apparently, Lehigh Valley Rail Management (LVRM) both owns train track and also operates as a controller of train traffic, in other words, LVRM provides freight logistics by directing the flow of train traffic. The record was not clear as to whether or not LVRM owned the tracks that are located in LVIP. However, the record suggests that

both LVIP and LVRM exercised authority only over the train tracks and train traffic within the Industrial Park.

Prior to Mr. O'Donnell's injury, some of the business owners within the Industrial Park had complained about the diesel fumes generated from engines which were idling while within the confines of LVIP. As a result, LVRM had been directing that train engines, after having delivered their freight cars, park off of LVIP property and onto the Norfolk Southern tracks.[1]

There was no evidence of written or oral agreements between LVIP, LVRM, and Norfolk Southern as it related to "parking" on the Norfolk Southern track.

Mr. O'Donnell's employer, Canadian Pacific, delivered freight cars to LVIP. After delivery, the LVRM directed Canadian Pacific engineers to "park" their engine off of the LVIP property and onto the train tracks owned by Norfolk Southern. The Canadian Pacific engineers parked the engine at issue on that part of Norfolk Southern track identified as "Valley 18." Mr. O'Donnell attempted to access the Canadian Pacific engine at Valley 18 when he allegedly stepped into a hole and injured his knee.

The controlling issue in this case is whether the Lehigh Valley defendants owed a duty to the plaintiffs to prevent harm to Mr. O'Donnell from a known or obvious danger. To establish a viable cause of action in negligence, the pleader must aver the following elements in his complaint:

1. A duty, or obligation, recognized by the law, requiring

---

1. We can only assume that there are times after a delivery is made that the freight company operating the engine is not prepared to drive their engine away because it may require a replacement crew and/ or freight logistics require the engine to wait until another pick-up is scheduled.

the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on the [actor's] part to conform to the standard required: a breach of the duty.

3. A reasonably close causal connection between the conduct and the resulting injury.

4. Actual loss or damage resulting to the interest of another.

*Ney v. Axelrod*, 732 A.2d 719, 721 (Pa. Super. Ct. 1999).

Additionally, "the mere happening of an accident does not entitle the injured person to a verdict; a plaintiff must show that defendant owed him a duty and that duty was breached." *Id.* (citing *Engel v. Parkway Co.*, 266 A.2d 685, 687 (Pa. 1970). Moreover, "unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." In determining whether a duty exists, duty "is predicated on the relationship existing between the parties at the relevant time, and necessarily requires some degree of knowledge." *Morena v. South Hills Health System*, 462 A.2d 680, 684 (Pa. 1983).

Ultimately, whether a duty exists is a question of fairness. *See Campo v. St. Luke's Hospital*, 755 A.2d 20, 24 (Pa. Super. Ct. 2000). The analysis "involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." *Id.* Moreover, the analysis "depends on many factors and is necessarily rooted in public policy considerations, *i.e.*, or ideas of history, morals, justice, and society in general in determining where the loss should fall." *Id.*

Here, the plaintiffs allege in their second amended complaint that the Lehigh Valley defendants owed them a duty of care because LVRM was "owner and operator of rail tracks and rail equipment in Bethlehem, Pennsylvania" and LVIP "was owner of the land in which Lehigh Valley Rail Management LLC operated their [*sic*] rail operations." (Second amended complaint filed 02/23/12 at ¶ 6, 7.) As such, we must analyze whether the Lehigh defendants owed a duty of care to the plaintiffs as landowners or possessors of Valley 18.

In Pennsylvania, it has long been the law that "the duty of a possessor of land towards a third person entering the land has been measured by the status of the entrant at the time of the accident." *Palange v. City of Philadelphia, Law Dept.*, 640 A.2d 1305, 1308 (Pa. Super. Ct. 1994). The restatement (second) of torts defines an "invitee" in the following manner:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Restatement (Second) of Torts § 332 (1965); *see also id.*

Possessors of land owe a duty to protect invitees from foreseeable harm, or "conditions on the land which are known or discoverable by the possessor." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). Moreover, the

possessor of land is subject to liability only if he:

(a) knows or by the exercise of reasonable care would discover the condition, and should realized that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against danger.

Restatement (Second) of Torts § 343; *see also Carrender*, 503 A.2d at 123.

"As a general rule, a landlord out of possession is not liable for injuries sustained by persons on his or her property unless the landlord has retained a right to control the portion of the premises on which the injury occurred." *Ott v. Unclaimed Freight Co.*, 577 A.2d 894 (Pa. Super. Ct. 1990). Moreover, "a landlord who retains control is only liable if, by exercise of reasonable care, the landlord could have discovered the condition and risk involved and made it safe." *Forgang v. Universal Gym Co.*, 621 A.2d 601 (Pa. Super. Ct. 1993).

In their brief, the plaintiffs argue that the Lehigh Valley defendants owed Mr. O'Donnell a duty of care for one of two reasons, or, perhaps, a combination of the two: (1) due to the agreement between the Lehigh Valley defendants and Canadian Pacific that allowed Canadian Pacific to access and use the Lehigh yard, the Lehigh Valley defendants had a legal duty to warn about the alleged unsafe conditions on Valley 18; and/or (2) that the Lehigh Valley defendants failed to instruct Canadian Pacific that Valley 18 was

owned by Northern Pacific, and that such actions were negligent and led to Mr. O'Donnell's injuries.

Apparently, the plaintiffs' initial theory was that the duty of care of LVIP and LVRM to the plaintiffs rises out of the ownership, possession and/or control of the property upon which the defendant was injured. Since the record is clear that LVIP and LVRM did not own or possess Valley 18, the plaintiffs now present an alternative theory asserting that because LVIP and LVRM wanted the Canadian Pacific engine off of the confines of the LVIP and the Canadian Pacific engine was directed to park onto the Norfolk Southern track, the Lehigh Valley defendants were exercising control over Valley 18, much as a landowner out of possession. In fact, the plaintiffs' brief baldly argues that "Canadian Pacific and LVRM entered into a business agreement that benefited both parties" and that the Lehigh Valley defendants "retained control of Canadian Pacific movements and the placement and storage of its trains, cars and engines." As a result, the plaintiffs argue that they acted as the landowner or possessors of Valley 18.

At best, the record established that LVIP and/or LVRM told the Canadian Pacific engineers to park their engine outside of the LVIP property and onto the Norfolk Southern track.

Plaintiffs have failed to create a factual record that establishes any business agreement or other mechanism by which LVIP and/or LVRM exercised or retained control of the Norfolk Southern property known as Valley 18. A directive to park off of the LVIP property and onto the Norfolk Southern property does not create a duty related to the maintenance of the Norfolk Southern property. Based upon the record, we can only assume that the Canadian

Pacific engineers were free to take their engine anywhere they wanted to, including to drive it back home, but if they wanted to park it, the Lehigh Valley defendants would not allow them to do so at the LVIP.

The second theory, that the Lehigh Valley defendants breached a duty to plaintiffs because they would not allow the Canadian Pacific engineers to park their engine at the LVIP property, but instead directed the Canadian Pacific engineers to park the engine onto another's property, and that the Lehigh Valley defendants failed to provide a "safe haven" on the other property for the Canadian Pacific engine to park, is not recognized as a viable theory of liability in Pennsylvania.

There is no issue of material fact in this case. Further, the plaintiffs cannot establish the existence of a duty of care as it relates to Valley 18 or to the injured plaintiff. The Lehigh Valley defendants, LVIP and LVRM, are entitled to summary judgment

Wherefore, we enter the following order:

## ORDER OF COURT

And now, this day of October, 2013, upon consideration of defendants Lehigh Valley Rail Management LLC and Lehigh Valley Industrial Park, Inc.'s motion for summary judgment and the plaintiffs, Gerard O'Donnell and Colleen O'Donnell's, opposition thereto and the record herein, it is hereby ordered that said motion is granted.